***NOT FOR PUBLICATION**

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| ALAMIRO MADRID VICENCIO, | : : : : : : : : : : : | Civil Action No. 12-7560 (JAP) |
| Petitioner, | | |
| v. | | **OPINION** |
| CHRISTOPHER SHANAHAN, et al., | | |
| Respondents. | | |

**APPEARANCES:**

**PERHAM MAKABI**, Counsel for Petitioner
125-10 Queens Blvd. Suite 6
Kew Gardens, N.Y. 11415

**COLETTE R. BUCHANAN**, Counsel for Respondents
Office of the U.S. Attorney
970 Broad Street
Room 700
Newark, N.J. 07102

**PISANO**, District Judge

   This matter is before the Court on Alamiro Madrid Vicencio ("Petitioner")'s Petition for a Writ of Habeas Corpus, filed pursuant to 28 U.S.C. § 2241.  Petitioner is detained at Monmouth County Correctional Facility and challenges his mandatory detention, alleging it is unlawful because he was not detained "when . . . released" from criminal custody under 8 U.S.C. § 1226(c).  Instead, Petitioner was detained approximately eleven years after he was sentenced to probation, meaning he was never incarcerated.  The issue presented here is whether the "when ...

released" clause in § 1226(c) means that an individual must be detained immediately after being released from custody or can be detained at some point in time after release from custody. For the reasons expressed below, this Court finds that "when ... released" in § 1226(c) means detention must occur immediately after release from criminal custody. Because Petitioner was detained eleven years after being sentenced to probation and was not incarcerated for that conviction, the Court will grant the Petition for Habeas Corpus and order an Immigration Judge to provide Petitioner with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a)(2).

I. BACKGROUND

Petitioner, a native and citizen of Chile, was admitted to the United States on December 24, 1980 as a lawful permanent resident. (Pet'r's Br. 3.) On March 16, 2001, Petitioner pled guilty to a charge of Sexual Abuse in the Second Degree and Endangering the Welfare of a Child in the Criminal Court of the State of New York, Bronx County. (*Id.*) The Court sentenced him to three years of probation for this offense. (*Id.*)

On October 22, 2012, the U.S. Department of Homeland Security, Immigration and Customs Enforcement ("ICE") arrested Petitioner and served him with a Notice to Appear. (*Id.*) The Notice to Appear stated that he was subject to removal pursuant to Section 237(a)(2)(A)(iii) of the Immigration and Nationality Act (the "Act"), in that he was convicted of an aggravated felony as defined in the Act, namely, an offense relating to Sexual Abuse of a Minor. (*Id.* at Ex. A.)

Petitioner is currently in custody at Monmouth County Correctional Facility. Petitioner contends that the immigration judge lacks jurisdiction to determine whether he should be released because the immigration judge is bound by the Board of Immigration's ("BIA") decision in *Matter of Rojas*, 23 I & N Dec. 117 (BIA 2001). On December 11, 2012, Petitioner

commenced this action, seeking a writ of habeas corpus and release from custody or, in the alternative, an individualized hearing before an Immigration Judge.

## II. DISCUSSION

Petitioner argues that his mandatory detention violates 8 U.S.C. § 1226(c) because he was not detained "when ... released" from criminal custody, as required by the statute. Petitioner explains that he was detained in October 2012 based upon his 2001 conviction for sexual abuse of a minor, for which he was never incarcerated; thus, he was not detained "when ... released" from criminal custody. Petitioner asserts that § 1226(c) is unambiguous, but if ambiguous, *Matter of Rojas*, 23 I & N Dec. 117 (BIA 2001), which stands for the proposition that an alien is subject to mandatory detention despite the fact that he was not detained immediately upon release from criminal custody, is unreasonable. Additionally, Petitioner asserts that the "only available means of challenging the applicability of the mandatory detention statute" is a *Joseph* hearing, and the standard in a *Joseph* hearing is contrary to procedural due process since it places a high burden of proof on Petitioner. *In re Joseph*, 22 I & N Dec. 799, 805 (BIA 1999).

Respondents, however, argue that Petitioner's detention is mandated by § 1226(c). Respondents assert that under § 1226(c)(1) (B), Petitioner did not have to be sentenced to a period of incarceration to be subject to mandatory detention. Respondents explain that the statute requires mandatory detention "without regard to whether the alien is released on parole, supervised release, or probation." Thus, Respondents argue that mandatory detention does not require incarceration if based on a crime in § 1226(c)(1)(B); instead, it just requires an alien to be subject to probation, since probation is a suspended sentence. Regarding the "when ... released" clause, Respondents contend that the statute at most expresses Congress' aspiration for timely action, but does not require that the government detain a criminal alien immediately upon release

from custody. Respondents also rely on a Fourth Circuit case, *Hosh v. Lucero*, 680 F.3d 375, 380 (4th Cir. 2012), which states that "when" has different meanings, and therefore, it is unlikely that "when ... released" means "at the moment of release, and not later." They contend that this statutory construction is consistent with Congress' overall intent to eliminate bond hearings for certain categories of criminal aliens.

In his reply brief, Petitioner argues that mandatory detention does not apply to Petitioner because he was never "released" from criminal custody and that the statute cannot be read to merely spur timely action by the government. Petitioner notes that the statute's requirement that the alien be taken into custody at a certain time is a substantive requirement that outlines the categories of persons who are subject to detention without possibility of bond, not merely a procedural requirement governing the detention process. In addition, Petitioner cites several cases from this Court that read "when ... released" to mean that the individual should be detained immediately when released from criminal custody. Lastly, Petitioner contends that the legislative history and predecessor statutes demonstrate that the statute was intended to require a continuous chain of custody over the alien.

Thus, the Court must examine the issue of whether the mandatory detention provision in 8 U.S.C. § 1226(c) applies only if the alien is detained immediately after being released from criminal custody for an offense listed in § 1226(c)(1)(A)-(D). Because Petitioner was detained eleven years after a conviction for which he was never incarcerated, the Court will grant Petitioner's Writ of Habeas Corpus.

### A. Jurisdiction

Under 28 U.S.C. § 2241(c)(3), habeas jurisdiction "shall not extend to a prisoner unless ... [h]e is in custody in violation of the Constitution or laws ... of the United States." This Court

has subject matter jurisdiction over this case because: (1) Petitioner is in the custody of the Department of Homeland Security ("DHS") at Monmouth County Correctional Facility; and (2) he argues that his mandatory detention violates 8 U.S.C. § 1226(c).

### B. Petitioner Is Not Subject to Mandatory Detention Under § 1226(c)

#### 1. Statute & Framework

The mandatory detention statute, 8 U.S.C. § 1226(c), provides: "[t]he Attorney General shall take into custody any alien who—

> (A) is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
>
> (B) is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C) or (D) of this title,
>
> (C) is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which the alien has been sentence to a term of imprisonment of at least 1 year, or
>
> (D) is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title, when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

Because this case turns on whether "when ... released" requires an alien to be detained immediately after his release from criminal custody and the BIA has already addressed this issue in *Rojas*, this Court will review the BIA's construction of the statute using the framework outlined in *Chevron U.S.A., Inc. v. Nat'l Res. Def. Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984).

In deciding if an agency's construction of a statute is appropriate, a court must conduct a two-part inquiry. *See Chevron*, 467 U.S. at 842. First, the court must examine "whether

Congress has directly spoken to the precise question at issue." *Id.* If "the intent of Congress is clear, that is the end of the matter," and "court[s], as well as the agency, must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43. The "judiciary is the final authority on issues of statutory construction and must reject administrative constructions which are contrary to clear congressional intent." *Id.* at 843 n. 9. If "a court, employing traditional tools of statutory construction, ascertains that Congress had an intention on the precise question at issue, that intention is the law and must be given effect." *Id.* However, if "the statute is silent or ambiguous with respect to the specific issue, the question for the court is whether the agency's answer is based on a permissible construction of the statute." *Id.* at 843. A court determines whether a statute is ambiguous by "look[ing] at both the most natural reading of the language and the consistency of the 'interpretive clues' Congress provided." *Saysana v. Gillen*, 590 F.3d 7, 13 (1st Cir. 2009).

Thus, this Court must determine whether Congress has "directly spoken" to the meaning of the "when ... released" clause.

### 2. Congress Clearly Intended That an Alien be Detained Immediately After Release From Criminal Custody Under § 1226(c)

Respondents argue that the statute does not require that the government detain a criminal alien immediately upon release from custody, but "at most expresses Congress' aspiration for quick action." They contend that a statutory time frame is simply meant to encourage timely action, unless Congress explicitly specifies a consequence for failure to comply. Since § 1226(c) does not specify any consequences for the government's failure to detain a criminal alien immediately upon release from criminal custody, Respondents argue that the statute should not

be construed to limit the government's ability to later detain such aliens. The Court is not persuaded.

This Court has repeatedly recognized that Congress intended that an alien be detained immediately after being released from criminal custody to be subject to mandatory detention under § 1226(c). *See Charles v. Shanahan*, 2012 WL 4794313, at *6 (D.N.J. Oct. 9, 2012) ("[T]he plain language of § 1226 unambiguously requires an alien to be detained immediately when released from criminal custody to be subject to mandatory detention."); *Christie v. Elwood*, 2012 WL 266454, at *9 (D.N.J. Jan. 30, 2012) ("This Court joins the overwhelming majority of courts and finds that 'Congress clearly intended to give the Attorney General the authority of mandatory detention under § 1226(c)(1) only if the government takes the alien into custody immediately when the alien is released from custody resulting from the removable offense enumerated in § 1226(c)' "); *Parfait v. Holder*, 2011 WL 4829391, at *9 (D.N.J. Oct. 11, 2011) (same); *Beckford v. Aviles*, 2011 WL 3515933, at *9 (D.N.J. Aug. 9, 2011) (same).[1]

Moreover, in a factually similar case— *Sylvain v. Holder*, 2011 WL 2580506 (D.N.J. Jun. 28, 2011)—this Court previously found that § 1226(c) was unambiguous. In *Sylvain*, Petitioner

---

[1] *See also Nimako v. Shanahan*, 2012 WL 4121102, at *8 (D.N.J. Sept.18, 2012) (holding that "Nimako is not subject to the mandatory detention exception in § 1226(c) because DHS did not take him into custody when he was released from criminal incarceration for a specified offense"); *Cox v. Elwood*, 2012 WL 3757171, at *4 (D.N.J. Aug.28, 2012) (finding "'when ... released' means 'immediately' and not 'any time after' release as determined by the BIA's interpretation"); *Dimanche v. Tay–Taylor*, 2012 WL 3278922, at *2 (D.N.J. Aug.9, 2012) (granting petition for writ of habeas corpus "where Petitioner is being detained by DHS five years after his release"); *Munoz v. Tay–Taylor*, 2012 WL 3229153, at *3 (D.N.J. Aug.6, 2012) (finding that "'when ... released' means 'immediately' and not 'any time after' release as determined by the BIA's interpretation" in *Rojas*); *Kot v. Elwood*, 2012 WL 1565438, at *8 (D.N.J. May 2, 2012) (finding that "Kot is not subject to the mandatory detention exception in § 1226(c) because DHS did not take Kot into custody when he was released from criminal incarceration for a specified offense in 1999, but allowed him to live in the community years before taking him into custody in August 2011"); *Nunez v. Elwood*, 2012 WL 1183701, at *3 (D.N.J. Apr.9, 2012) (finding that "'when ... released' means 'immediately' and not 'any time after' release as determined by the BIA's interpretation").

filed a Petition for Writ of Habeas Corpus, challenging his mandatory detention under § 1226(c). *Id.* at *1.  Petitioner was convicted of various offenses over the years, and on October 4, 2007, "he was convicted of criminal possession of a controlled dangerous substance and sentenced to a conditional discharge." *Id.*  On April 12, 2011, DHS took Petitioner into custody. *Id.*  The Court rejected the argument that "'when' means 'after,'" and held that "Congress clearly intended to give the Attorney General the authority of mandatory detention under § 1226(c)(1) only if the government takes the alien into custody immediately when the alien is released from custody resulting from one of the offenses enumerated in § 1226(c)." *Id.* at *7.  Consequently, this Court granted Petitioner's Writ of Habeas Corpus and directed an Immigration Judge to "provide Petitioner with an individualized bond hearing, pursuant to 8 U.S.C. § 1226(a)(2)...."  *Id.*  Likewise, in *Charles*, 2012 WL 4794313, at *6, the Court held that Petitioner "[wa]s not subject to mandatory detention, because ICE detained him nearly ten years after he was sentenced to a conditional discharge" and granted Petitioner's Writ of Habeas Corpus.

Respondents argue that the Court should follow the Fourth Circuit's ruling in *Hosh*.  In that case, the Fourth Circuit found that § 1226(c) is ambiguous, and the word "when" in the statute "can be read, on one hand, to refer to 'action or activity occurring 'at the time that' or 'as soon as' other action has ceased or begun'" or "[o]n the other hand, 'when' can be read to mean the temporally broader 'at or during the time that,' 'while,' or 'at any or every time that ....'" *Hosh*, 680 F.3d at 379–80.  Thus, the Fourth Circuit concluded that it is "unlikely that 'when ... released' means 'at the moment of release, and not later'" and held that the alien "is not exempt from mandatory detention." *Id.* at 377, 380.

However, as a Fourth Circuit opinion, *Hosh* is not binding on this Court.  *See Martial v. Elwood*, 2012 WL 3532324, at *3 (D.N.J. Aug. 14, 2012); *Munoz*, 2012 WL 3229153, at *3.

Moreover, *Hosh* is not persuasive because the Fourth Circuit's analysis and holding are completely opposite of this Court's analysis on the issue. *See Nimako*, 2012 WL 4121102, at *7. "Absent a directive from the Third Circuit, th[is] Court respectfully declines to adopt the *Hosh* holding and will instead follow the reasoning utilized by the First Circuit in" *Saysana v. Gillen*. *Id.* at *8; *see also Munoz*, 2012 WL 3229153, at *4; *Gonzalez–Ramirez v. Napolitano*, 2012 WL 3133873, at *5 n. 8 (D.N.J. Jul. 30, 2012). In *Saysana*, the First Circuit, like this Court, found that § 1226(c) is unambiguous. *Saysana*, 590 F.3d at 13. In addition, the First Circuit and this Court agree that § 1226(c) requires detention immediately after release from criminal incarceration because the statute "clearly envision[s] a continuous chain of custody of dangerous aliens." *Nimako*, 2012 WL 4121102, at *7; *see also Saysana*, 590 F.3d at 16 (stating the "Court is not persuaded that the legislature was seeking to justify mandatory immigration custody many months or even years after an alien had been released from state custody"). Similarly, the Third Circuit recognized that the statute requires a continuous chain of custody for criminal aliens when it said that § 1226(c) "ensur[es] that aliens convicted of certain crimes would be present at their removal proceedings and not on the loose in their communities, where they might pose a danger." *Diop v. ICE/Homeland Sec.*, 656 F.3d 221, 231–32 (3d Cir. 2011).

The Court agrees with its previous holdings in *Sylvain* and *Charles* and holds that the plain language of § 1226(c) unambiguously requires an alien to be detained immediately when released from criminal custody to be subject to mandatory detention. The plain language of the statute provides that "[t]he Attorney General shall take into custody any alien ... when the alien is released ...." 8 U.S.C. § 1226(c). As this Court stated previously, this language indicates that "Congress clearly intended to give the Attorney General the authority of mandatory detention ... only if the government takes the alien into custody immediately when the alien is released from

9

custody resulting from one of the offenses enumerated in" the statute. *See, e.g., Sylvain*, 2011 WL 2580506, at *7. Thus, "when" means "immediately"; it does not mean "after." *Id.*

Consequently, Petitioner is not subject to mandatory detention under § 1226(c) because: (1) he was not detained immediately after being released from criminal custody; and (2) as discussed below, he was never released from criminal custody.

### 3.     Mandatory Detention Requires a Period of Incarceration

Respondents' argument that mandatory detention does not require a period of incarceration if based on § 1226(c)(1)(B) is contrary to the plain language of the statute. Respondents contend that because the statute mandates detention when an alien is released from custody "without regard to whether the alien is released on ... probation," then he does not have to be released from incarceration to be detained—he just needs to have been placed on probation. The Court finds, however, that the phrase "on parole, supervised release, or probation" simply refers to various types of conditions that may accompany an alien's release from custody for one of the enumerated offenses. *See Beckford v. Aviles*, 2011 WL 3515933, at *9. (The "when ... released" clause "explains the later use of the terms related to criminal detention [parole, probation, supervised release]"). In other words, mandatory detention is warranted when the alien is released from criminal custody, regardless of the specific terms and conditions—such as probation—that govern that release. This phrase cannot be read to create another subset of individuals that are subject to mandatory detention, i.e., those that are convicted of an enumerated offense, but only sentenced to a term of probation. *See Saysana*, 590 F.3d at 14 ("A far more natural reading is that the 'when released' language applies to an alien who has been detained criminally for one of the listed activities."). As a result, because Petitioner was never

incarcerated for his 2001 conviction, he was never released from custody and therefore, cannot be subject to mandatory detention.

## III. CONCLUSION

For the reasons set forth above, the Court grants Petitioner's Petition for a Writ of Habeas Corpus and directs that an Immigration Judge provide Petitioner with an individualized bond hearing pursuant to 8 U.S.C. § 1226(a)(2).

Dated: February 26, 2013

                                            /s/ Joel A. Pisano
                                            JOEL A. PISANO
                                            United States District Judge